UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| MILTON'S DISTRIBUTING COMPANY, INC. d/b/a SIGNATURE IMPORTS,<br><br>Plaintiff,<br><br>v.<br><br>SOCIEDADE CENTRAL de CERVEJAS e BEBIDAS, S.A., and OLDE WORLD IMPORTS, INC. d/b/a AIDIL WINES & LIQUORS<br><br>Defendants | C. A. No. 06-173-ML |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF OBJECTION TO PLAINTIFF'S MOTION TO DISMISS COUNT I OF DEFENDANTS' COUNTERCLAIM**

## INTRODUCTION

Sociedade Central de Cervejas e Bebidas, S.A. ("SCC"), and Olde World Imports, Inc., d/b/a Aidil Wines and Liquors ("Olde World") (SCC and Olde World are hereinafter referred to, collectively, as the "Defendants"), hereby submit this memorandum of law in support of their objection to Plaintiff's Motion to Dismiss Count I of Defendants' Counterclaim. Count I is entitled "Abuse of Process". Plaintiff has failed to demonstrate that the Defendants can prove no set of facts which would entitle them to the relief requested in Count I. Accordingly, Plaintiff's motion must be denied.

**FACTS**

SCC is located in Portugal SCC manufactures and sells four brands of beer - Sagres Branca, Sagres Preta, Sagres Imperial, and Sagres Bohemia - in the United States It sells these brands to independent importers and distributors such as the parties in this case, who in turn sell them to wholesalers, retailers and restaurants in the various states.

The dispute in this case concerns the Plaintiff's exclusive right, if it exists, to distribute the brand Sagres Bohemia in Rhode Island. Plaintiff alleges that it is entitled to sole distributorship rights as to that brand in Rhode Island pursuant to a written contract with SCC, and pursuant to R. I. Gen. Laws § 3-13-9.[1] The Defendants, who are the manufacturer and the sole authorized importer of Sagres Bohemia in Rhode Island, respectively, have denied the relevant facts in the complaint, and have filed several counterclaims.[2] They allege that the written contract, dated February 17, 2006[3], applies only to one Sagres brand: Sagres Branca. Sagres Bohemia is not a brand as to which the Plaintiff has been appointed the exclusive Rhode Island distributor, and the Plaintiff, acting by and through its President, Melissa Gordon, agreed to that exclusion on February 20, 2006, and so indicated by signing the contract on that date

The Defendant's abuse of process claim does not arise from the central issue in the case (whether Plaintiff is entitled to sole distributorship rights in Rhode Island as to Sagres Bohemia), but from the allegations in Plaintiff's First Amended Verified Complaint concerning the

---

[1] See Plaintiff's First Amended Verified Complaint, Paragraphs 1 – 2. Section 3-13-9 provides: No supplier who, pursuant to an agreement with a wholesaler, has designated a sales territory for which a wholesaler is primarily responsible or in which a wholesaler is required to concentrate its efforts shall enter into an agreement with any other wholesaler for the purpose of establishing an additional wholesaler for any of its brands, including any brand or brands introduced after the effective date of the agreement, in all or part of the same territory

[2] Count I is based on Abuse of Process, and is the subject of the pending motion Count II alleges Tortious Interference with Contract, and Count III alleges that R I. Gen Laws §3-13-9 is unconstitutional under the Commerce Clause of the United States Constitution.

[3] As indicated, infra, the contract was actually executed on February 20, 2006

February 17, 2006 contract and the circumstances under which Melissa Gordon did, or did not, sign it.

The February 17, 2006 contract is likely to comprise the foundation of the Plaintiff's case, and the foundation of the Defendants' counterclaims. The importance of the document in this case cannot be understated. Plaintiff attached a partially executed version of the February 17, 2006 contract to its Verified Complaint (Complaint Exhibit B), and alleged, under oath, that the contract had never been signed by its President, Melissa Gordon. This allegation is patently untrue and constitutes perjury and fraud upon this court. Ms. Gordon *did* sign the contract. The Defendants have attached a copy of the signed contract, in the form in which she signed it, to their Answer and Counterclaim as Exhibit A thereto. Indeed, it was Melissa Gordon who insisted on a written contract concerning Plaintiff's exclusive rights in Rhode Island, and it was she who drafted the February 17, 2006 contract for the SCC Corporate Affairs Administrator's signature and who presented it to him on February 20, 2006. While Ms. Gordon was present, the Administrator edited the contract to note that the appointment was for Sagres Branca only, not for any other Sagres product (an exclusion which would of course apply to the brand at issue in this case, Sagres Bohemia).[4] The Corporate Affairs Administrator signed the contract with this exclusion, and Ms. Gordon did likewise. The parties signed two substantially identical versions of the contract, both with the handwritten exclusion - one for Pennsylvania, and one for a number of other states, including Rhode Island.

[4] The handwritten edit consists of a footnote in the text at the brand name "Sagres." The footnote is reads: "means Sagres Branca"

Less than two months after Ms Gordon had executed these documents, Plaintiff filed this lawsuit.[5] As stated above, in support of its claims, Plaintiff attached to its complaint, and then to its First Amended Verified Complaint, a partially executed copy of the February 17 contract that does not contain the signature of Ms. Gordon. With regard to the language in the agreement that limits the contract to Sagres Branca, Plaintiff claims in paragraph 13 of its First Amended Verified Complaint "this limitation was added unilaterally, without Milton's agreement, and after Milton's first saw and/or signed the document."[6] The Verified Complaint was signed by Marvin Gordon, Melissa Gordon's father, under the pains and penalties of perjury, stating that he had personal knowledge of the facts at issue in this matter, he had reviewed the factual allegations in the Verified Complaint, and that they were true and accurate.

In Count I of their Counterclaim, entitled "Abuse of Process", Defendants assert that the Plaintiffs, by filing the Verified Complaint with patently false allegations concerning Melissa Gordon's signature, have made use of judicial process and committed perjury and fraud on the court, and that it has done so for ulterior and illegitimate purposes, including but not limited to intimidating, harassing, and forcing Defendants to forego their respective rights under Defendants' Contract, improperly interfering with the Defendants' Contract, and depriving Defendants of the benefits of Defendants' Contract. Defendants also assert that as a result of this

---

[5] Plaintiff has also commenced a lawsuit in Massachusetts, now pending in the Superior Court Department of the Trial Court entitled "*Milton's Distributing Company Inc d/b/a Signature Imports v. Sociedade Central de Cervejas e Bebidas, S. A , Olde World Imports, Inc. d/b/a Aidil Wines & Liquors and Coimbra Imports & Exports, Inc d/b/a Aidil Wines & Liquors*, C. A. No. 06-649, based in part on essentially the same allegations as is this case concerning Ms Gordon's signature on the February 17, 2006 contract. In that lawsuit, Ms. Gordon does not dispute the genuineness of her signature on the February 17, 2006 contract.

[6] Defendants do not dispute that the limitation was added after Milton's "first saw" the document, since it was Ms. Gordon who drafted the document, without the limitation, in the first instance. Defendants only dispute the alternative allegation, that the limitation was added after Ms Gordon signed the document. As noted in footnote 5 above, Defendants do not believe that Ms Gordon disputes the genuineness of her signature.

abuse of process, Defendants have incurred damages. Plaintiffs have filed a Motion to Dismiss Count I, claiming Defendants have failed to state a claim upon which relief can be granted.

**STANDARD OF REVIEW**

In considering this motion to dismiss a claim, this Court must take the allegations in the Defendants' counterclaim as true and must make all reasonable inferences in favor of the Defendants. *Watterson v Page*, 987 F.2d 1, 2 (1st. Cir. 1993). It must consider the facts alleged therein in the light most favorable to the Defendants; dismissal will be appropriate only if it appears beyond doubt that the Defendants can prove no set of facts in support of their claim which would entitle them to relief. *Roeder v. Alpha Industries*, 814 F.2d 22, 25 (1st Cir. 1987) *citing Conley v. Gibson*, 335 U.S 41, 45-46, 2 L.Ed. 2d 80, 78 S.Ct. 99 (1957). Under this admittedly gentle standard, which is appropriate for this stage of this proceeding, this Court must assume, for example, that Ms. Gordon did sign the February 17, 2006 contract, that she signed it *after* the handwritten limitation was inserted, and that she did so with full knowledge of its nature and import and intending to be bound thereby, notwithstanding Plaintiff's allegations to the contrary. See Defendants' Answer and Counterclaim, Paragraphs 38, 39

**ARGUMENT**

Plaintiff's Motion to Dismiss relies on an assertion that Count I of Defendants' Counterclaim fails to fulfill the requirements of an abuse of process claim, in that it simply presents an issue of which contract is the legally operative document. Plaintiff's motion misses the point. The basis for Count I of the counterclaim is not simply that there is a disagreement regarding what transpired and what document is genuine; rather, the basis of Count I of the counterclaim is that Plaintiff has *knowingly and intentionally* submitted misleading evidence to this Court as the foundation for the claims in its Complaint. (Defendant's Counterclaim,

Paragraph 35.) Assuming these allegations concerning intent are true, which this Court must do for purposes of this motion, Plaintiff has committed perjury in its First Amended Verified Complaint and fraud on this Court by knowingly and intentionally submitting misleading evidence and attesting to it under oath. Plaintiff cannot seriously assert that, if true, these allegations would not support a claim that the Plaintiff has abused the judicial process Plaintiff has used judicial process for a wrongful purpose for which such process is not intended - to knowingly and intentionally submit misleading evidence and to knowingly and intentionally make false statements under oath for the purpose of obtaining, by judicial order, rights which the Plaintiff cannot obtain by negotiation and contract. *Goldstein v Rhode Island Hospital Trust Nat'l Bank*, 296 A.2d 112, 116 (R.I. 1972). *None* of the cases cited by Plaintiff in support of its motion stand for the proposition that knowingly and intentionally perpetrating a fraud on the Court is not an abuse of process. [7]

Plaintiff argues that "the regular use of process cannot constitute abuse of process". Filing a Verified Complaint that knowingly and intentionally contains fraudulent and false allegations and submits misleading evidence is anything but "the regular use of process". This constitutes a complete misuse and, in fact, abuse of judicial process. Defendants also submit that Count I makes a claim that Plaintiff's fraudulent actions will warrant severe sanctions from the Court at the appropriate time, including dismissal of the action as well as compensation to these Defendants for having had to defend a claim based on fraudulent representations to the Court. In *Aoude v. Mobile Oil Corporation*, 892 F.2d 1115 (1st Cir. 1989), the United States Court of Appeals for the First Circuit upheld a District Court's dismissal of the plaintiff's lawsuit, based

[7] While Defendants are confident that the evidence will substantiate the allegations set forth in Count I of the Counterclaim, Defendants do not intend to attempt to prove these allegations in this memorandum, as this is not the appropriate time to do so

upon the fact that the plaintiff had attached a false agreement to the complaint rather than the real one. In upholding the dismissal, the Court of Appeals stated that "district courts must be accorded considerable latitude in dealing with serious abuses of the judicial process and that the trier's determination to dismiss a case for such a reason should be reviewed only for abuse of discretion." *Aoude,* 892 F.2d at 1117 *citing, e.g., Link v. Wabash R.R. Co.*, 370 U.S. 626, 633 8 L. Ed. 2d 734 , 82 S. Ct. 1386 (1962); *HMG Property Investors, Inc. v. parquet Indus. Rio Canas, Inc.*, 847 F 2d 908 (916-917 (1st Cir. 1988); *cf Fashion House, Inc. v. K Mart Corp*, 892 F.2d 1076, slip op. at 8 (1st Cir 1989 (district court's choice of sanctions for discovery violation will only be set aside for abuse of discretion); *Damiani v Rhode Island Hospital*, 704 F.2d 12, 15-16 (1st Cir. 1983 (similar). In Defendants' Counterclaim, Defendants submit that the abuse of process evidenced by Plaintiff's Complaint constitutes a "fraud on this Court". (Defendants Counterclaim, Paragraph 35.)

> A "fraud on the court" occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense". *Aoude*, 892 F.2d at 1118.

In *Aoude*, where the facts are strikingly similar to the facts of the case before this Court, the Court went on to state "Because corrupt intent knows no stylistic boundaries, fraud on the court can take many forms. In our estimation, however, the present case is a near-classic example of the genre." *Id* The Court has inherent power which includes "the ability to do whatever is reasonably necessary to deter abuse of the judicial process." *Id. citing Eash v Riggins Trucking, Inc.*,, 757 F.2d 557, 567 (3d Cir. 1985). Defendants assert that this inherent power and wide discretion certainly includes the awarding of damages to the defendant when they are a victim of such abuse of process. *See e.g Chambers v. NASCO*, 501 U.S. 32, 46, 111 S. Ct. 2123, 115 L.

Ed. 2d 27 (1991) (court recognized that district court has inherent power to assess fees as a sanction for party's fraud on the court).

Defendants' Counterclaim has put Plaintiff on notice in the earliest stages of this litigation that these actions of fraud will not be taken lightly by these Defendants, and these Defendants intend to seek whatever remedies the Court deems just and proper in this litigation. This early notice has provided the Plaintiff with the opportunity to withdraw these claims as soon as possible, to limit the damage done. Plaintiff asserts "Milton's has done nothing more (sic) initiate process based on violation of ... law". (Plaintiff's Memorandum, Page 6) Defendants submit that by intentionally and knowingly making false statements and submitting misleading evidence, the Plaintiff has done much more; it has attempted to misuse and abuse the judicial process and has attempted to perpetrate a fraud on this Court. "Tampering with the administration of justice involves far more than an injury to a single litigant. It is a wrong against institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society". *Aoude*, 892 F 2d at 1119 *citng Justice Black, Hazel-Atlas Glass Co v. Hartford-Empire Co.*, 332 U.S. 238, 246, 88 L. Ed. 1250, 64 S. Ct. 997 (1944)

Defendants are not seeking immediate sanctions or judgment on this Counterclaim at this time, as this is not the appropriate time to seek such relief. It would be equally improper, however, to grant Plaintiff's request to dismiss this Counterclaim, as the Counterclaim clearly establishes a claim upon which relief can be granted to the Defendants.

**CONCLUSION**

In assessing a motion to dismiss for failure to state a claim upon which relief can be granted, the Court applies a strict standard. "Dismissal is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Roeder v. Alpha Industries*, 814 F.2d at 25 (1st Cir. 1987) *citing Conley v. Gibson*, 335 U.S. 41, 45-46, 2 L.Ed. 2d 80, 78 S.Ct. 99 (1957). The Plaintiff has failed to meet this burden in its motion. The Defendants have set forth facts which, if true, establish a claim for which relief can be granted. Accordingly, Defendants respectfully request that Plaintiff's motion be denied.

Respectfully submitted,

Sociedade Central De Cervejas E Bebidas, S.A., Olde Word Imports, Inc., d/b/a Aidil Wines and Liquors,

By their attorneys,

Ratcliffe Burke Harten & Elias LLP

/s/ Stephen H. Burke
Stephen H. Burke, #2759
1600 Financial Plaza
Providence, RI 02903
Tel: 401.331.3400
Fax: 401.331.3440

**CERTIFICATION**

I hereby certify that on the 18th day of August, 2006, a true and accurate copy of the within was forwarded via ECF to:

Mark W. Freel, Esq.
Edwards Angell Palmer & Dodge
2800 Financial Plaza
Providence, RI 02903

/s/ Stephen H. Burke